UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN HRAPKIEWICZ,

       Plaintiff,

v.                                                              Case No. 11-13418
                                                                  Honorable Patrick J. Duggan

BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, DOROTHY
NELSON, LISA J. BROSSIA, and
PAUL J. SCHWIKERT,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS DOROTHY NELSON'S, LISA BROSSIA'S, AND PAUL SCHWIKERT'S MOTION FOR DISMISSAL AND/OR SUMMARY JUDGMENT

      Plaintiff filed this action against Defendants on August 8, 2011, alleging that she was unlawfully terminated from her positions at Wayne State University ("WSU"). Presently before the Court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) and/or for summary judgment pursuant to Rule 56, filed by Defendants Dorothy Nelson, Lisa Brossia, and Paul Schwikert (hereafter "Individual Defendants") on November 17, 2011. Plaintiff filed a response to the motion on November 12, 2011; the Individual Defendants filed a reply brief on December 26, 2011. The Court held a hearing with respect to the motion on January 25, 2011.

**Factual and Procedural Background**

      In 1974, Plaintiff was hired as a part-time faculty member of WSU's Division of

Laboratory Animal Resources ("DLAR"). She attained full-time status in 1979. DLAR "is responsible for administering [WSU's] laboratory animal care and use program." (Defs.' Br. in Supp. of Mot. at 5, quoting http://dlar.wayne.edu/index.php.) As part of her duties, Plaintiff served as a Clinical Veterinarian for the DLAR and Director of the Wayne County Community College District ("WCCCD") Veterinary Technology Program at WSU.

As a research university, WSU uses laboratory animals in its medical research efforts. The United States Public Health Service ("PHS") has oversight over the care and use of animals used in medical research. (*See* Defs.' Mot. Ex. C.) The Office of Laboratory Animal Welfare ("OLAW") oversees compliance with PHS policy. (*See id.*) Federal law requires institutions that use animals in research to establish an Institutional Animal Care and Use Committee ("IACUC" or "committee"). Each facility's IACUC is responsible for ensuring that the facility complies with federal policy in its use and care of the animals and that animals are treated in a humane manner. (*See* Am. Compl. ¶¶ 18-25.) Each committee is responsible for regularly reviewing the entity's care and treatment of the animals in its studies and at its facilities and reporting the committee's findings to the federal government. (*See, e.g.*, Defs.' Mot. Ex. C at 1-2; *see also* 42 U.S.C. § 289d(b)(3).) OLAW has issued a publication that serves as a source of PHS regulation of the IACUCs. (*See* Defs.' Mot. Ex. C.)

Federal legislation and regulations establish the minimum number of members that an IACUC must have and provide that the members "shall possess sufficient ability to

assess animal care, treatment, and practices in experimental research as determined by the needs of the research facility and shall represent society's concerns regarding the welfare of animal subjects used at such facility." 7 U.S.C. § 2143(b); 42 U.S.C. § 289d(2). Each IACUC must include "at least one individual who has no association with [the] entity and at least one doctor of veterinary medicine." 42 U.S.C. § 289d(b)(2). Non-affiliated members are "intended to provide representation for general community interests in the proper care and treatment of animals." 7 U.S.C. § 2143(b)(1)(B)(iii).

The chief executive officer of the research facility is charged with establishing the facility's IACUC and appointing its members. 7 U.S.C. § 2143(b); 42 U.S.C. § 289d(2); 9 C.F.R. Part 2, § 2.31(a). According to Plaintiff, the members of WSU's IACUC are appointed by WSU's President or his or her delegate. (Am. Compl. ¶ 23.) During the period relevant to Plaintiff's lawsuit, Defendant Dorothy Nelson was appointed as the Institutional Official of WSU's IACUC.[1] (*Id*. ¶ 24.) Plaintiff served on WSU's IACUC for approximately twenty of the thirty-seven years that she was employed at the university. (*Id*. ¶ 28.)

As of March 1, 2011, WSU's website identified twenty-five members on its IACUC. (Pl.'s Resp. Ex. 2.) The website also lists the various WSU departments with representatives on the committee, including the DLAR. (*Id*.) Plaintiff is identified on the

---

[1]The regulations define the "Institutional Official" as "the individual at a research facility who is authorized to legally commit on behalf of the research facility that the requirements of 9 C.F.R. parts 1, 2, and 3 will be met." 9 C.F.R. Part I, § 1.1.

3

IACUC membership list as "Clinical Veterinarian, Division of Laboratory Animal Resources; Director, Veterinary Technology Program, WCCCD." (*Id*.)  Two other individuals are identified on the list as the committee's "Non-Affiliated, Community Member[s]." (*Id*.)

Plaintiff alleges in her Amended Complaint that WSU's IACUC is "an independent oversight body that is not under the control of WSU." (*Id*. ¶ 22.)  As indicated above, however, federal law requires the individual research facility to establish its IACUC and grants the facility's chief executive officer the authority to appoint the IACUC members.  Further, federal regulations expressly state that an IACUC performs its functions "as an agent of the research facility." 9 C.F.R. Part 2, § 2.31(c).  In commentary to the final regulations, the Department of Agriculture provided the rationale for including this statement:

> The final rule sets forth the functions that the Committee shall perform, "as an agent of the research facility" (final rule Sec. 2.31(c)). We have added this language to allay the commenters' concerns that under the proposed rules, the Committee would operate as an enforcement agent for APHIS [the United States Department of Agriculture Animal and Plan Health Inspection Service]. It was never our intent that the Committee carry out APHIS's regulatory responsibilities. Rather, the Committee is intended to function in an oversight and clearing-house capacity to assist the facility in maintaining compliance with the Act and regulations. As stated in the supplementary information accompanying the revised proposal, it is "our intent that institutions act through [the Committee and attending veterinarian] while remaining ultimately responsible." (54 FR 10838)
> * * *
> We have continued our consideration of the allocation of authority and responsibilities under the Act. We persist in the view that the research facility is ultimately responsible for assuring that it is in compliance with the Act and regulations. As previously stated in this document, we believe

4

> that the Committee, as an agent for the facility, is best situated to carry out many of the research facility's responsibilities under the Act. The research facility must provide the Committee with sufficient authority to carry out the duties delegated to it under the regulations, in order to ensure that it is in compliance.

54 Federal Register, No. 168, August 31, 1989 at 36112-36163 (quoted in Defs.' Br. in Supp. of Mot. at 7).

According to Plaintiff's Amended Complaint, in July and August 2009, Patty Denison, a WSU employee and then-member of the IACUC, voiced concerns "about losing funding sources and about the welfare of the laboratory animals at WSU in part because of non-compliant conditions at WSU animal research facilities and Nelson's refusal to comply with the self[-]reporting obligation regarding PHS policy violations." (Am. Compl. ¶ 31.)  Plaintiff further alleges that "the issue of Nelson's efforts to minimize adverse conditions at research facilities . . . became a bone of contention between Nelson and . . . Denison at IACUC meetings."  (*Id.* ¶ 33.)  Plaintiff asserts that she and other IACUC members "publicly sided with Denison's efforts to force Nelson to comply with PHS Policy."  (*Id.* ¶ 34.)  Apparently Nelson removed Denison from the IACUC in September 2009.  (*Id.* ¶ 35.)

Plaintiff alleges in her complaint that she further "spoke on issues of public concern at this independent oversight body [IACUC] in her professional capacity as a Clinical Veterinarian."  (Am. Compl. ¶¶ 93, 96.)  From her complaint, it appears that Plaintiff is referring to the following additional activities:

- speaking at meetings in opposition to the "censorship" she believed was

5

> occurring at IACUC meetings (*id.* ¶ 45);
>
> •reporting negative findings concerning conditions for research animals at the Kresge Eye Institute facility to Denison and Nelson in their positions on the IACUC and "rais[ing] concerns at weekly DLAR management team meetings" (*id.* ¶¶ 46-62);
>
> •"strongly object[ing]" to suggestions at a Fall 2010 IACUC meeting that "hands-on" training for investigators be eliminated (*id.* ¶ 65-67);
>
> •opposing a proposal to reduce investigator hands-on training presented at an IACUC meeting in December 2010, and abstaining when a vote on the proposal was taken (*id.* ¶ 72.)

Presumably referring to the above activities, Plaintiff claims in her Amended Complaint that she was terminated from the DLAR faculty on February 28, 2011, in retaliation for speaking "about matters of public concern or because of her association with someone who was speaking about matters of public concern [i.e. Denison]." (*Id.* ¶ 90.) Shortly after her termination from the WSU faculty, Plaintiff was removed as a member of WSU's IACUC. (*Id.* ¶ 81.)

On August 8, 2011, Plaintiff initiated this lawsuit against Defendants claiming that her termination was unlawful. In an Amended Complaint filed November 3, 2011, she alleges the following counts against the Board of Governors of WSU ("Board") and the Individual Defendants: (I) retaliation for the exercise of her First Amendment rights in violation of 42 U.S.C. § 1983; (II) age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"); and (III) "interference with liberty interest/denial of request for name clearing hearing."

On September 9, 2011, the Board filed a motion to dismiss Plaintiff's claims

against it. In response to the motion, Plaintiff indicated *inter alia* that she was "voluntarily" dismissing Count III of her complaint "in its entirety." Plaintiff and the Board subsequently entered a stipulation stating that Plaintiff was dismissing *with prejudice* Counts I and III against the Board, only, and dismissing *without prejudice* Count II against the Board, only– resulting in the dismissal of the Board from this lawsuit completely.

As set forth earlier, the Individual Defendants filed their pending motion on November 17, 2011. Based upon Plaintiff's response to the Board's earlier motion, the Individual Defendants indicate in their motion that they assume Count III of the Amended Complaint alleging a violation of Plaintiff's right to a name clearing hearing is no longer pending. The Individual Defendants, therefore, do not address this claim in their motion. They do argue that they are entitled to summary judgment on Plaintiff's retaliation claim (Count I) because she did not engage in activity protected by the Constitution. The Individual Defendants further argue that the Court should dismiss Plaintiff's state law age discrimination claim (Count II) either by declining to exercise supplemental jurisdiction over that claim or finding that she fails to allege facts to support the claim against Defendants Dorothy Nelson and Paul Schwikert.

In response, Plaintiff does not address the Individual Defendants' assumption that she is no longer pursuing Count III of her Amended Complaint. She does state in her response brief that her age discrimination claim (Count II) against the Individual Defendants "will be voluntarily dismissed." (Pl.'s Resp. Br. at 1 n.1.) Plaintiff indicates,

7

however, that she intends to re-file this claim in state court. (*Id*. at 1.)

The Individual Defendants argue in reply that the Court should allow Plaintiff to dismiss her age discrimination claim *without prejudice* only if the dismissal is conditioned on her paying their costs and attorney's fees if she re-files the claim in state court.

### Counts II and III of Plaintiff's Amended Complaint

At this stage of the proceedings, Plaintiff may voluntarily dismiss Counts II and III of her Amended Complaint "only by court order, on terms that the court considers proper," as her request follows the Individual Defendants' motion to dismiss and/or for summary judgment. *See* Fed. R. Civ. P. 41(a)(2). As one judge in this District has found:

> It is not unusual to award costs and attorney's fees when a case is voluntarily dismissed under Rule 41(a)(2). *See* 9 C. Wright & A. Miller, Federal Practice & Procedure § 2366, at 177-80 n.9 (1971 & Supp. 1984) (collecting cases). The purposes for such awards include reimbursing the defendant for the litigation costs incurred when there is a risk that the same suit will be refiled and will impose duplicative expenses upon him. *See Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985); *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965); *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186, 191 (E.D. Pa. 1982).

*FTSS Korea v. First Tech. Safety Systems*, 254 F.R.D. 78, 79 (E.D. Mich. 2008). In *FTSS Korea*, Judge Lawson awarded the defendant costs and attorney's fees because there was "certainty" that the plaintiff would re-file the voluntarily dismissed claim.

Similarly, as indicated earlier, Plaintiff has stated her intent to re-file her age discrimination claim (Count II) in state court. In other words, the continuation of that claim in state court is a "certainty." Following Judge Lawson's reasoning, this Court

8

therefore believes that the Individual Defendants are entitled to reimbursement of the costs and fees they incurred having to respond to Plaintiff's age discrimination claim in this venue. The Court therefore will dismiss Count II of Plaintiff's Amended Complaint against the Individual Defendants *without* prejudice *on the condition that* Plaintiff must pay them one-third of the reasonable attorney's fees and costs they incurred preparing, filing, and arguing their motion.[2] The Individual Defendants are directed to submit evidence to support those fees and costs within ten days of this decision.

Plaintiff's Amended Complaint fails to allege facts to support her name clearing hearing claim (Count III). Further, Plaintiff's statements in her pleadings suggest that she has no intent to pursue that claim in state court and, instead, is abandoning that claim completely. Therefore, the Court is dismissing Count III of her Amended Complaint *with* prejudice.

This leaves Plaintiff's claim that she was terminated in retaliation for the exercise of her First Amendment rights (Count I). As indicated earlier, the Individual Defendants assert that they are entitled to summary judgment with respect to this claim because Plaintiff's alleged speech was not protected by the Constitution.

## Count I of Plaintiff's Amended Complaint

---

[2] The Court is awarding the Individual Defendants only a fraction of their costs and fees because only one of Plaintiff's three claims are being dismissed without prejudice.

9

## Summary Judgment Standard[3]

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*,

---

[3]Although the Individual Defendants filed a motion to dismiss and/or for summary judgment, they rely only on Rule 56 to seek summary judgment in their favor on Plaintiff's First Amendment retaliation claim (Count I).

477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## Applicable Law and Analysis

A public employee asserting a violation of his or her First Amendment rights first "must show that, as a matter of law, the speech at issue was protected." *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007). To make this showing, the employee must demonstrate that he or she "spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958 (2006) (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 568, 88 S. Ct. 1731 (1960)). This is because, while "public employees do not surrender all their First Amendment rights by reason of their employment," the First Amendment affords possible protection only where the public employee speaks "as a citizen addressing matters of public concern." *Id*. at 417, 126 S. Ct. at 1957 (citations omitted).

The question of "whether the employee spoke as a citizen on a matter of public concern" is comprised of two separate requirements: "that the employee (1) must have spoken 'as a citizen' *and* (2) must have 'addressed matters of public concern.'" *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007) (emphasis added) (citation omitted). If either requirement is not satisfied, the employee's speech is not protected by the First Amendment. *See Garcetti*, 547 U.S. at 418, 126 S. Ct. at 1958 (citations omitted); *see also Weisbarth*, 499 F.3d at 545 ("even employee speech

addressing a matter of public concern is not protected if made pursuant to the employee's official duties" and therefore not "as a citizen.")

With respect to the first requirement– that the employee spoke "as a citizen"– the Supreme Court held in *Garcetti* that "when public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 421, 126 S. Ct. at 1960 (emphasis added). This holding controls the outcome of the present case, as it did in *Garcetti*, *Haynes* and *Weisbarth*.

Plaintiff made the statements that are the subject of her First Amendment retaliation claim pursuant to her professional responsibilities as a clinical veterinarian on WSU's DLAR faculty to care for and monitor the treatment of the research animals at WSU's facilities. Notably, responsibility for the oversight of WSU's laboratory animal care and use program fell jointly upon WSU's DLAR and IACUC. *See*, http://dlar.wayne.edu/index.php. Plaintiff's participation on the IACUC was as a representative of the DLAR and the WCCCD Veterinary Technology Program. Plaintiff was not appointed to the committee as one of its non-affiliated members assigned to represent the public's interests. Instead, the evidence undisputedly indicates that she served on the committee because of her faculty positions, and as part of her duties in those positions. She was removed from the IACUC after her position at WSU was terminated. While her official job duties at WSU may not have required her to serve on the IACUC, the Supreme Court cautioned in *Garcetti* that,

12

> [f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

547 U.S. at 424-25, 126 S. Ct. at 1962.

Plaintiff nevertheless argues that several factors weigh in favor of finding that she was speaking as a citizen. First, she contends that there were members of the public present when she engaged in the relevant speech. Plaintiff, however, is referring to those IACUC members who are not affiliated with WSU– i.e. the "non-affiliated" members mandated by law to serve on the committee "to represent the general community interests" and those members representing the John D. Dingell Medical Center.[4] (*See* Pl.'s Resp. Br. at 7-9.) For this reason, the Court does not view Plaintiff's speech as having been made to the "public."

In any event, the Sixth Circuit and other courts have concluded that the speaker's audience is not a determinative factor in the analysis: "[t]he reasoning of *Garcetti* . . . makes clear that the determinative factor in those cases was not where the person to whom the employee communicated fit within the employer's chain of command, but rather whether the employee communicated pursuant to his or her official duties." *Weisbarth*, 499 F.3d at 545 (concluding that the employee was speaking pursuant to her

---

[4] According to WSU's website, the DLAR directly operates and maintains animal facilities at the John D. Dingell Medical Center and purchases animals, cages, supplies and/or equipment for the facilities it operates. *See* http://dlar.wayne.edu/index.php.

official duties even though the statements were made to a third-party consultant hired by her employer); *see also Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323 (10th Cir. 2007) (holding that a school district superintendent spoke as district employee when she conveyed to the school board her concern about the district's lack of compliance with federal regulations governing its Head Start program, when she instructed a subordinate to contact federal authorities about illegal enrollments in the program, and when she related to board members her concerns about the board's failure to comply with state open meetings law; but finding that she spoke as a private citizen when she wrote to the state's attorney general about alleged violations of state open meetings law). Plaintiff's statements were made at IACUC meetings and only to IACUC members. Her statements contained her findings and opinions about IACUC policies, the treatment of animals at WSU's animal research facilities, and/or the condition of those facilities. In her capacity as a clinical veterinarian for the DLAR and Director of the WCCCD Veterinary Technology Program, she specifically had the duty to review, report on, and/or comment on these matters.

The next factor that Plaintiff asserts is relevant to finding that she was speaking as a private citizen is the setting in which her speech occurred. Plaintiff contends that "[w]hen an employee speaks in a setting outside their normal workplace, this suggests that the nature of the speech in question has changed from that made by an employee pursuant to her official duties to private citizen speech." (Pl.'s Resp. Br. at 9.) Regardless of whether this statement is correct, the Court finds that it has no bearing in

14

the present matter. As discussed earlier, Plaintiff's membership on the IACUC essentially was one of her duties as a clinical veterinarian at WSU's DLAR. The IACUC membership list expressly identifies Plaintiff as representing WSU's DLAR. Thus her activities as an IACUC member were not outside her employment setting.

Plaintiff further contends that the content of her speech and her motive for speaking weigh in favor of finding that she was speaking as a private citizen. The Sixth Circuit has acknowledged that the content of a public employee's speech is relevant to deciding whether it bore a relationship to the employee's job duties. As the Sixth Circuit stated in *Weisbarth*: "[T]he content of an employee's speech– though not determinative– will inform the threshold inquiry of whether the speech was, in fact, made pursuant to the employee's official duties." 499 F.3d at 545. The Court will assume that the employee's motive also is relevant to this determination. However, for the reasons discussed above, Plaintiff's communications relating to WSU's care and treatment of its medical research animals and the IACUC's oversight of WSU's animal research facilities (which as noted before was in conjunction with WSU's DLAR) were pursuant to her job duties. She was fulfilling her job responsibilities by speaking about these matters. That the matters are also of a concern to the public does not change this fact and this fact results in her speech being afforded no First Amendment protection. *See id*. ("[E]ven employee speech addressing a matter of public concern is not protected if made pursuant to the employee's official duties.")

Lastly, Plaintiff claims that "the nature of the speech" suggests that she was

15

speaking as a private citizen. Plaintiff claims that her speech, "although communicated through the IACUC committee, was outside of the ordinary in content, when compared to the everyday communications of her position. It concerned events that were unusual, serious in nature and which arose from her discretionary assessment of the treatment of university research animals and research site conditions." (Pl.'s Resp. Br. at 17.) For the reasons discussed in the previous paragraph, the Court does not believe that the nature of Plaintiff's communications alters its finding that they were made pursuant to her job duties.

## Conclusion

In conclusion, the Court finds that Plaintiff engaged in the speech that forms the basis of her First Amendment retaliation claim pursuant to her official job duties. As such, she was "not speaking as [a] citizen[] for First Amendment purposes, and the Constitution does not insulate [her] communications from employer discipline." Therefore, the Court holds that the Individual Defendants are entitled to summary judgment with respect to Plaintiff's claim alleging retaliation in violation of her First Amendment rights (Count I).

Plaintiff's claim alleging age discrimination in violation of Michigan law (Count II) is dismissed without prejudice on the condition that Plaintiff pays the reasonable costs and attorney's fees the Individual Defendants incurred defending against the claim in this

venue.[5] The Individual Defendants shall submit evidence to support such costs and fees within ten days of this Opinion and Order. Finally, Plaintiff's claim alleging violations of her due process rights to a name clearing hearing (Count III) is dismissed with prejudice.

Accordingly,

**IT IS ORDERED**, that Defendants Dorothy Nelson's, Lisa Brossia's, and Paul Schwikert's motion for dismissal and/or summary judgment is **GRANTED**.

Dated: February 6, 2012                                              s/PATRICK J. DUGGAN
                                                                                        UNITED STATES DISTRICT JUDGE

Copies to:
Daniel J. Bernard, Esq.
Michael L. Pitt, Esq.

---

[5] If Plaintiff fails to pay these costs and fees prior to re-filing the claim in state court, the Individual Defendants can return to the Court and request that the claim be dismissed with prejudice.